COMMONWEALTH of Pennsylvania,
Appellee,

v.

Richard O'BIDOS, Appellant.

Superior Court of Pennsylvania.

Submitted: Jan. 12, 2004.
Filed: April 23, 2004.

Ari S. Moldovsky, Philadelphia, for appellant.

Hugh J. Burns, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before: JOYCE, OLSZEWSKI, and JOHNSON, JJ.

OLSZEWSKI, J.:

¶ 1 Richard O'Bidos (appellant/defendant) appeals from his judgment of sentence imposed by the Court of Common Pleas, Philadelphia County (Lazarus, J.). We affirm.

¶ 2 The trial court adequately discussed the facts of this case.

On September 9, 1997, at between five and six o'clock in the evening, complainant [victim] received a telephone call from the appellant, who was the manager of the ambulance company for which she had been working for approximately one year. Complainant also had a friendly personal relationship with the appellant and his family. Appellant requested that complainant report for work that evening because he was shorthanded. Complainant obtained care for her children and reported to work at approximately 9:30 p.m. Another employee who was in the office when complainant arrived was dismissed for the evening by appellant shortly thereafter.

The complainant and the appellant sat down on either side of appellant's desk and briefly spoke about business matters, after which the appellant walked around the desk and began massaging the complainant's shoulders. After the complainant instructed the appellant to stop, he grabbed her arm, pulled her from the chair, and threw her on the ground behind the desk. Appellant began to kiss the complainant and she again told him to stop. Appellant then slapped the complainant in the face and threatened to hit her again if she did not be quiet. She attempted to fight him off and he covered her mouth, punched her in the stomach and began ripping off her shirt. He proceeded to kiss the complainant's breasts and hit her again in the stomach when she started to scream. Thereafter, appellant pulled the complainant's pants down around her knees and forced his penis into her vagina. After he finished raping her, he instructed her to "get the fuck out." N.T. 10/6/98, p. 51.

Complainant ran to her car, drove to a pay phone and called her friend, Heidi Kaufman. Ms. Kaufman told her to go home and that she would meet her there, which she did. Once there, Ms. Kaufman advised her not to wash or shower for evidentiary purposes. They called the police, who instructed her to go to the hospital. Complainant proceeded to Nazareth Hospital but was

informed there that nothing could be done because they did not have the capacity to do a rape kit. Complainant was then taken by a police officer to the sex crimes unit, where she was questioned and then taken to Episcopal Hospital for a rape kit.

Jeffrey Geller, M.D., treated the complainant at Episcopal Hospital. At trial, he was qualified as an expert in emergency medicine and the collection of sexual assault kits and testified that his findings upon examination of the complainant on the night of the alleged incident were "not inconsistent" with the complainant's testimony that a sexual assault had been perpetrated upon her. N.T. 10/7/98, p. 77.

The specimens obtained by Dr. Geller at Episcopal Hospital, as well as the panties worn by the complainant on the night of the assault, were tested at the Philadelphia Criminalistics Laboratory and tested positive for sperm cells and prostatic acid phosphatese, a semen enzyme.

Defendant agreed to surrender himself to the authorities on September 25, 1997. He failed to surrender as agreed and was arrested on September 27, 1997.

The defense presented the testimony of two witnesses, both of whom claim to have seen the appellant and complainant together earlier on the evening of the assault. Jennifer Hopta, a waitress at the Riverbank bar on Delaware Avenue, testified that she saw the appellant and complainant together at the bar sometime between 7:00 p.m. and 9:30 p.m. Juan Clark, an acquaintance of the appellant, testified that he saw the appellant and complainant at Penn's Landing sometime between 4:00 p.m. and 6:00 p.m.

Trial Court Opinion, 7/8/03, at 2–4. After a jury trial, appellant was found guilty of rape.

¶ 3 The post-trial procedural history of this case is significant to the ultimate disposition of this case. We described the procedural history in our most recent decision.

On December 8, 1998, [appellant] was sentenced to a term of 7 ½ to 15 years incarceration. Appellant was represented at trial by Fortunato Perr[i], Esquire. After sentencing, Appellant retained Ronald Joseph, Esquire, as counsel. Appellant then filed a notice of appeal and was ordered by the trial court to file a statement of matters complained of on appeal pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure. Although Appellant failed to comply with the trial court's order to file a 1925(b) statement, the trial court nevertheless proceeded to address the issue of whether the evidence was sufficient to support Appellant's conviction. On direct appeal, Appellant challenged both the sufficiency and weight of the evidence and argued that trial counsel provided ineffective assistance by: failing to offer in his opening and closing statements a clear theory of what happened between Appellant and the victim; dissuading Appellant from testifying on his own behalf; and failing to request DNA testing of semen samples taken from the victim. Noting that we had the benefit of the trial court's opinion on the issue of Appellant's challenge to the sufficiency of the evidence, this Court reviewed that claim on appeal; however, we held that Appellant's remaining claims had been waived under *Commonwealth v. Lord*, 553 Pa. 415, 719 A.2d 306 (1998)[,] as a result of his failure to include them in a 1925(b) statement. On March 7, 2000, we affirmed Appellant's judgment of sentence. *Commonwealth v. Obidos,*

268 EDA 1999, unpublished memorandum, 757 A.2d 995 (Pa.Super.2000).

On September 6, 2000, Appellant filed a timely *pro se* PCRA petition, wherein he sought reinstatement of his direct appeal rights *nunc pro tunc* on the basis that his prior appellate counsel provided ineffective assistance by failing to file a 1925(b) statement in accordance with the trial court's order. Present counsel was appointed to represent Appellant and counsel filed an amended PCRA petition on December 18, 2000. Following a hearing on September 12, [September 13, and November 27,] 2001, the PCRA court denied Appellant relief.

*Commonwealth v. O'Bidos*, 974 EDA 2002, unpublished memorandum at 1–3, 828 A.2d 401 (Pa.Super. filed March 31, 2003). Appellant appealed the PCRA court's denial of relief to this Court, and we reinstated appellant's direct appeal rights *nunc pro tunc*. We are now entertaining appellant's reinstated direct appeal.

¶ 4 Appellant raises four issues for our review: (1) whether trial counsel was ineffective for failing to call Julann Banscher and appellant as witnesses; (2) whether the verdict was against the weight of the evidence; (3) whether the conviction was against the sufficiency of the evidence; and (4) whether appellant was denied a fundamental right when trial counsel prevented him from testifying at trial.

**INEFFECTIVE ASSISTANCE OF COUNSEL**

¶ 5 Appellant first raises claims of ineffective assistance of trial counsel. The Commonwealth argues that claims of ineffective assistance are not generally permitted on direct review and that appellant should raise these claims in a subsequent PCRA petition.

¶ 6 The Commonwealth correctly cites to *Commonwealth v. Grant*, 572 Pa. 48, 813 A.2d 726 (2002), for the proposition that claims of ineffective assistance of counsel should be deferred until collateral review.[1] The Commonwealth argues that we may not consider appellant's claims of ineffective assistance because this "second" direct appeal, which we granted *nunc pro tunc*, essentially limits our scope of review to events that occurred "prior to the [original] direct appeal, [and] not in a PCRA proceeding." Commonwealth's brief, at 6. Essentially, the Commonwealth wants us to ignore the PCRA proceedings that occurred in September and November of 2001 where appellant, Julann Banscher, and appellant's trial attorney, Fortunato Perri, testified. We are not persuaded by the Commonwealth's argument.

¶ 7 Initially, we note that our Supreme Court carved out an exception to the general rule in *Grant*. We are permitted to review claims of ineffectiveness on direct appeal "for which there is an evidentiary record developing the claims and a trial court opinion addressing those claims." *Commonwealth v. Belak*, 573 Pa. 414, 825 A.2d 1252, 1254 n. 6 (2003) (citing *Commonwealth v. Bomar*, 573 Pa. 426, 826 A.2d 831 (2003)). Such a record exists in the instant case.

¶ 8 Appellant's case is procedurally similar to *Commonwealth v. Wright*, 832 A.2d 1104 (Pa.Super.2003). In *Wright*, the defendant filed a timely PCRA petition and alleged trial counsel ineffectiveness for failure to file a direct appeal. The PCRA court granted the defendant an appeal *nunc pro tunc*. In the defendant's *nunc pro tunc* appeal to this Court, we reviewed the merits of the ineffectiveness claim. In doing so, we noted that the issue was "fully litigated at the PCRA hearing," and

---

1. We note that appellant failed to cite to *Grant* or its progeny in his brief.

that "an adequate record [exists] upon which we can assess this ineffectiveness claim because there was a full evidentiary hearing on the issue at which trial counsel appeared and testified." *Wright*, 832 A.2d at 1108–09. In the instant case, the PCRA court held a hearing on the issue of trial counsel ineffectiveness where appellant, Julann Banscher, and appellant's trial attorney, Fortunato Perri, testified. Accordingly, we are able to adequately review appellant's ineffective assistance of counsel claims. *See also Commonwealth v. Corley,* 816 A.2d 1109, 1114 n. 1 (Pa.Super.2003) (on direct appeal *nunc pro tunc,* ineffective assistance of counsel claims raised in PCRA petition and addressed during PCRA hearing where trial counsel testified are appropriate for review).

▇▇▇ ¶ 9 Turning to the merits of appellant's claim, we begin with the presumption that counsel was effective. *Commonwealth v. Miller,* 572 Pa. 623, 819 A.2d 504, 517 (2002); *Commonwealth v. Duda,* 831 A.2d 728, 732 (Pa.Super.2003). A claimant establishes ineffective assistance of counsel when he demonstrates that "[1] the underlying claim is of arguable merit; [2] that counsel's action or inaction was not grounded on any reasonable basis designed to effectuate the appellant's interest; and finally, [3] that counsel's action or inaction was prejudicial to the client." *Commonwealth v. Costa,* 560 Pa. 95, 742 A.2d 1076–77 (1999). *See also Commonwealth v. Clayton,* 572 Pa. 395, 816 A.2d 217 (2002); *Commonwealth v. Johnson,* 572 Pa. 283, 815 A.2d 563 (2002). For an action (or inaction) by counsel to be considered prejudicial to the client, there must be a "reasonable probability that the outcome of the proceedings would have been different." *Johnson,* 815 A.2d at 573. All three prongs of this test must be satisfied. If an appellant fails to meet even one prong of the test, his conviction will not be reversed on the basis of ineffective assistance of counsel.

▇▇▇ ¶ 10 Appellant first asserts that trial counsel was ineffective for failing to call his girlfriend, Julann Banscher, as a witness at trial to testify that she was in the apartment above the ambulance company office and that she did not hear screaming or any indications of rape.

To establish ineffectiveness for failure to call a witness, Appellant must establish that: (1) the witness existed; (2) the witness was available; (3) counsel was informed of the existence of the witness or counsel should otherwise have known of him; (4) the witness was prepared to cooperate and testify for Appellant at trial; and (5) the absence of the testimony prejudiced Appellant so as to deny him a fair trial. *Commonwealth v. Petras,* 368 Pa.Super. 372, 534 A.2d 483, 485 (1987). A defendant must establish prejudice by demonstrating that he was denied a fair trial because of the absence of the testimony of the proposed witness. *Commonwealth v. Nock,* 414 Pa.Super. 326, 606 A.2d 1380, (1992). Further, ineffectiveness for failing to call a witness will not be found where a defendant fails to provide affidavits from the alleged witnesses indicating availability and willingness to cooperate with the defense. *Commonwealth v. Davis,* 381 Pa.Super. 483, 554 A.2d 104 (1989), allocatur denied, 524 Pa. 617, 571 A.2d 380 (1989).

*Commonwealth v. Khalil,* 806 A.2d 415, 422 (Pa.Super.2002). There is no question that trial counsel knew of the existence, availability, and whereabouts of Ms. Banscher. Further, it is clear that Ms. Banscher was willing to cooperate with appellant's defense, and she provided an affidavit to that affect. The only question is whether appellant was prejudiced by the absence of Ms. Banscher's testimony.

¶ 11 Trial counsel testified at the PCRA hearing that he could not remember why he did not call Ms. Banscher. He did state that she was available to testify, however, she never told him that she was in the building at the time of the rape and did not hear anything. N.T., 9/13/01, at 11–12. According to Ms. Banscher, trial counsel did not have her testify because "the case was going well, that I didn't need to come up to testify that it wouldn't have done any difference to the case." N.T., 11/27/01, at 12.

¶ 12 Appellant presented two witnesses at trial, each of whom testified that they saw appellant and the victim together the evening of the rape. Specifically, appellant and the victim were seen at Penn's Landing between 4:00 and 6:00 p.m. and then were seen at the Riverbank Bar from 7:00 until 9:30 p.m. This testimony directly contradicts the supposed testimony of Ms. Banscher that appellant was with her in their apartment above the office until 6:45 p.m. and returned that same evening at 10:00 p.m. N.T., 11/27/01, at 17, 19. We cannot say that trial counsel's strategy of not presenting contradictory witnesses was ineffective. *See Commonwealth v. Chimenti*, 362 Pa.Super. 350, 524 A.2d 913, 918–19 (1987).

¶ 13 Appellant next contends that trial counsel was ineffective for preventing appellant from testifying on his own behalf at trial.

To address this issue, we are guided by *Commonwealth v. Thomas*, 783 A.2d 328 (Pa.Super.2001), which provides that the decision to testify on one's own behalf:

is ultimately to be made by the accused after full consultation with counsel. In order to support a claim that counsel was ineffective for "failing to call the appellant to the stand," [the appellant] must demonstrate either that (1) counsel interfered with his client's freedom to testify, or (2) counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision by the client not to testify in his own behalf.

*Id.* At 334. "Counsel is not ineffective where counsel's decision to not call the defendant was reasonable." *Commonwealth v. Breisch*, 719 A.2d 352, 355 (Pa.Super.1998).

*Commonwealth v. Todd*, 820 A.2d 707, 711 (Pa.Super.2003). *See also Commonwealth v. Lambert*, 568 Pa. 346, 797 A.2d 232, 247 (2001) (quoting *Commonwealth v. Uderra*, 550 Pa. 389, 706 A.2d 334, 340 (1998)).

¶ 14 Counsel testified during the PCRA hearing that, after reviewing the record, his advice to appellant "was very likely . . . was not to testify in this case." N.T., 9/13/01, at 10. Trial counsel testified that there were issues that could be brought out on cross-examination if appellant testified, including prior criminal history, other complainants, and circumstances surrounding his arrest. Further,

[O]ne of the issues that I think we talked about was the perception to the jury if Mr. Obidos would have testified. The jury would not have looked favorably upon him if he would have admitted to this relationship with this woman because I believe there was some relationship between this woman and Ms. Banscher, some friendship or some discussion that they had back and forth about some things. And there was some issues as to whether or not Mr. Obidos was using Ms. Banscher to take over her mother's ambulance company. There were a lot of things that may have come to light that didn't necessarily need to in this case.

N.T., 9/13/01, at 27–28. While trial counsel repeatedly admitted that his testimony at the hearing was primarily based on his

recent review of the record, and not upon an independent recollection, he stated that "based on the record, I apparently did advise him not to take the stand. And I would do that today." N.T., 9/13/01, at 34.

¶ 15 Further, the trial court conducted a colloquy with appellant regarding his decision not to testify.

THE COURT: Mr. Obidos-

THE DEFENDANT: Yes, Ma'am.

THE COURT: First of all, have you taken any drugs, alcohol or medication within the last twelve hours?

THE DEFENDANT: Yes, Ma'am.

THE COURT: What kind?

THE DEFENDANT: Motrin.

THE COURT: Nothing that would affect your ability to understand what is going on here today?

THE DEFENDANT: No, just to relieve swelling.

THE COURT: Do you understand that you have a right either to testify on your own behalf if you wish and you also have the right not to testify.

THE DEFENDANT: Yes, Ma'am.

THE COURT: Have you discussed whether or not you will be testifying with Mr. Perri?

THE DEFENDANT: Yes, we have.

THE COURT: It is my understanding from your attorney, Mr. Perri, that you have decided not to testify in this matter.

THE DEFENDANT: That's correct, Ma'am.

THE COURT: I just wanted to make sure that you understand that you have the right to testify if you had wanted to and you agree with Mr. Perri in terms of your trial strategy in deciding not to testify?

THE DEFENDANT: Yes, Ma'am.

THE COURT: Do you have any questions?

THE DEFENDANT: Not at this time, Ma'am.

N.T., 10/7/98, at 90–91.

¶ 16 We are convinced that appellant's waiver was voluntary and informed and based upon a reasonable strategy. We therefore do not find appellant's trial counsel ineffective for failing to call appellant as a witness in his own defense. *See Commonwealth v. Schultz,* 707 A.2d 513, 520 (Pa.Super.1997).[2]

## WEIGHT OF THE EVIDENCE

 ¶ 17 Appellant next contends that his convictions were against the weight of the evidence. Specifically, appellant asserts that Ronald Joseph, appellant's first appellate counsel, was ineffective for failing to file a post-sentence motion challenging the weight of the evidence. Appellant therefore argues that he is entitled to appellate review on his weight of the evidence claim.

¶ 18 In our most recent memorandum decision in this case, we found that appellate counsel was ineffective for failing to file a 1925(b) statement. *Commonwealth v. O'Bidos,* 828 A.2d 401, 974 EDA 2002, unpublished memorandum (Pa.Super. filed March 31, 2003). We did not find, however, that appellate counsel was ineffective for failing to file post-sentence motions, and in particular, a post-sentence motion raising the weight of the evidence.

2. Appellant raises the underlying issue (that he was denied his fundamental right of testifying on his own behalf) once again in part D of his brief. Based upon the above reasoning, we similarly find that appellant was not deprived of his fundamental right because he knowingly and voluntarily waived his right to testify.

¶ 19 Nevertheless, appellant urges us to address the merits of his weight of the evidence claim simply because we found appellate counsel ineffective for failing to file a 1925(b) statement. This reasoning is unpersuasive. Weight of the evidence claims must be raised via oral, written, or post-sentence motions in the trial court for the issue to be preserved for appeal. Pa.R.Crim.P. 607; *Commonwealth v. Hodge,* 441 Pa.Super. 653, 658 A.2d 386, 389 (1995). Appellant failed to raise the weight of the evidence with the trial court. Accordingly, the issue is waived.

¶ 20 The issue of ineffective assistance of counsel for failing to file such a motion is not waived. We are constrained, however, to defer consideration of this issue until collateral review.[3] *Commonwealth v. Grant,* 572 Pa. 48, 813 A.2d 726 (2002). Accordingly, we dismiss this claim without prejudice.

## SUFFICIENCY OF THE EVIDENCE

¶ 21 Appellant next claims that his convictions were not supported by sufficient evidence. He argues that, while we addressed this issue in a prior decision, *Commonwealth v. Obidos,* 268 EDA 1999, unpublished memorandum at 4–6, 757 A.2d 995 (Pa.Super. March 7, 2000), he was denied effective assistance of counsel because appellate counsel failed to file a brief.[4] The Commonwealth asserts that

the law of the case doctrine applies, and we therefore may not revisit an issue that we previously addressed on the merits.

¶ 22 In *Commonwealth v. Viglione,* 842 A.2d 454 (Pa.Super.2004), an *en banc* panel of this Court extensively discussed the law of the case doctrine. We quoted *Commonwealth v. Starr,* 541 Pa. 564, 664 A.2d 1326 (1995), in defining the doctrine.

Among the related but distinct rules which make up the law of the case doctrine are that: (1) upon remand for further proceedings, a trial court may not alter the resolution of a legal question previously decided by the appellate court in the matter; (2) *upon a second appeal, an appellate court may not alter the resolution of a legal question previously decided by the same appellate court;* and (3) upon transfer of a matter between trial judges of coordinate jurisdiction, the transferee trial court may not alter the resolution of a legal question previously decided by the transferor trial court.

*Starr,* 664 A.2d at 1331 (citations omitted and emphasis added) (quoted by *Viglione,* 842 A.2d at 462). Just because we reinstated appellant's direct appeal rights does not vitiate our prior orders. We see no reason why the doctrine should not apply in this case. Therefore, we must determine if there is any exception to the doc-

---

**3.** The Commonwealth asserts that "[w]hile defendant could raise this allegation of ineffective assistance of counsel ... via the PCRA, he will have difficulty prevailing because he will be compelled to explain why he failed to raise this with the other ineffectiveness claims in his first PCRA petition." Commonwealth's brief, at 15 n. 4. We disagree. It is now well established that a PCRA petition brought after an appeal *nunc pro tunc* is considered appellant's first PCRA petition, and the one-year time clock will not begin to run until this appeal *nunc pro tunc* renders his judgment of

sentence final. *See Commonwealth v. Karanicolas,* 836 A.2d 940 (Pa.Super.2003); *Commonwealth v. Lewis,* 718 A.2d 1262 (Pa.Super.1998). Because *Grant* generally requires all claims of ineffective assistance of counsel to be raised on collateral, not direct, review, we see no prejudice to appellant in deferring this issue.

**4.** Contrary to appellant's assertion, appellate counsel did file a brief. The certified record indicates the brief was filed on July 12, 1999.

trine that would permit us to review appellant's sufficiency of the evidence claim.

¶ 23 There are only three exceptions to the law of the case doctrine.

> Departure from either of these principles is allowed only in exceptional circumstances such as [1] where there has been an intervening change in the controlling law, [2] a substantial change in the facts or evidence giving rise to the dispute in the matter, or [3] where the prior holding was clearly erroneous and would create a manifest injustice if followed.

*Starr*, 664 A.2d at 1332 (quoted in *Viglione* 842 A.2d at 464). The record does not indicate any change in law or facts, and neither appellant nor the Commonwealth indicate any. Therefore, for us to ignore the law of the case doctrine, we must find that our prior holding was "clearly erroneous" and "manifest injustice" would occur if we followed our previous decision.

¶ 24 When analyzing a case based upon this third exception, we must be cautious.

> Pennsylvania courts must be scrupulous in applying the exception so that it does not swallow the rule. First, the prior court's ruling must, in fact, be so palpably erroneous that reversal is almost certain on appeal. Even then, the error must also create such an injustice as to be plainly intolerable.

*Viglione*, 842 A.2d at 464 (footnote and citations omitted).

¶ 25 A careful review of the record and an examination of our sufficiency of the evidence analysis in 268 EDA 1999 reveals that our decision was soundly based in fact and not "clearly erroneous." Even if we were to assume that our decision was "clearly erroneous," we find no "manifest injustice." Our previous decision was not based upon arguments or briefs, but upon

"the entire trial record ... and all evidence actually received." *O'Bidos*, 268 EDA 1999, unpublished memorandum at 4 (citing *Commonwealth v. Valette*, 531 Pa. 384, 613 A.2d 548, 549 (1992)). We also note that appellant did have the benefit of an appellate brief during his original direct appeal. The certified record indicates that appellant filed a brief in the original appeal on July 12, 1999. Therefore, appellant previously had the opportunity to argue the sufficiency of the evidence. These facts do not create such an injustice that is "plainly intolerable."

¶ 26 We conclude that the law of the case doctrine applies, and as a result, we are not permitted to revisit the issue of sufficiency of the evidence.

## SENTENCE IMPROPERLY CALCULATED

¶ 27 Appellant next requests us to review appellant's sentence because counsel was ineffective for failing to raise the issue in a post-sentence motion. He argues that the lower court improperly calculated his prior record score under to the sentencing guidelines when determining his sentence.

¶ 28 First, a "challenge to the calculation of the Sentencing Guidelines raises a question of the discretionary aspects of a defendant's sentence." *Commonwealth v. Johnson*, 758 A.2d 1214, 1216 (Pa.Super.2000) (citing *Commonwealth v. Archer*, 722 A.2d 203 (Pa.Super.1998)). Since appellant is challenging the discretionary aspects of his sentence, we must consider his brief on this issue a petition for permission to appeal. *Commonwealth v. Yanoff*, 456 Pa.Super. 222, 690 A.2d 260, 267 (1997). *See also Commonwealth v. Tuladziecki*, 513 Pa. 508, 522 A.2d 17 (1987); 42 Pa.C.S.A. § 9781(b).

¶ 29 For us to reach the merits of such an issue, four prerequisites must be met:

1) the issue must be specifically preserved in a timely motion to modify sentence; 2) a timely notice of appeal must be filed; 3) the issue must be set forth in the issues to be raised on appeal in the statement of questions presented; and 4) the issue must be included within a concise statement of reasons for allowance of appeal which demonstrates a substantial question that the sentence imposed was not appropriate under the Sentencing Code.

*Yanoff,* 690 A.2d at 267 (citations and footnote omitted).

¶ 30 Appellant failed to timely move to modify his sentence either in post-sentence motions or in his PCRA petition. Also, appellant failed to include a statement of reasons for allowance of appeal in his brief to this Court. Accordingly, appellant waived the underlying issue.

¶ 31 Similar to appellant's weight of the evidence claim, however, his claim of ineffective assistance of counsel for failing to file a motion to modify his sentence is not waived, but must be deferred until collateral review under the PCRA. *Commonwealth v. Grant,* 572 Pa. 48, 813 A.2d 726 (2002). Accordingly, we dismiss this claim without prejudice.

CONCLUSION

¶ 32 Based upon the above analysis, we affirm appellant's judgment of sentence.

¶ 33 Judgment of sentence AFFIRMED.