J.S45044/15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| HEATHER K. HOUSEWEART, | : | |
| | : | |
| Appellant | : | No. 474 MDA 2015 |

Appeal from the PCRA Order March 4, 2015
In the Court of Common Pleas of Lycoming County
Criminal Division No(s).: CP-41-CR-0001036-2011

BEFORE: BOWES, WECHT, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:       **FILED SEPTEMBER 23, 2015**

Appellant, Heather K. Houseweart, appeals from order entered in the Lycoming County Court of Common Pleas, dismissing her first petition filed pursuant to the Post Conviction Relief Act[1] ("PCRA"). Appellant avers counsel was ineffective for failing to call a material witness at trial. We affirm.

Following a jury trial, Appellant was convicted of aggravated and simple assault. These charges arose from an altercation between Appellant and Jill Suzanne Kinley ("Victim") in the bathroom of the Eagles Club, a bar in Williamsport on March 26, 2011. N.T., 3/1/12, at 23, 26.

---

[*] Former Justice specially assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

On June 4, 2012, Appellant was sentenced to three to six years' imprisonment. On April 4, 2013, Appellant filed a PCRA petition. On September 12, 2013, the PCRA petition was dismissed based upon counsel's failure to comply with the June 27, 2013 order of the PCRA court. Order, 9/12/13. On September 30, 2013, Appellant filed a *pro se* notice of appeal. On April 30, 2014, this Court vacated the September 12, 2013 order and remanded for the appointment of new counsel. **Commonwealth v. Houseweart**, 1760 MDA 2013 (unpublished memorandum) (Pa. Super. Apr. 30, 2014).

On July 16, 2014, the PCRA court entered an order stating that because the notes of testimony from the trial were unavailable, "it is the [c]ourt's reluctant conclusion that the only realistic way to achieve justice in this matter is to order a new trial. The [c]ourt acknowledges that this is being raised *sua sponte* and would like input from all parties, including the Commonwealth and new PCRA counsel." Order, 7/16/14. On September 3, 2014, the PCRA court entered an order directing defense counsel to file either an amended PCRA petition or a letter pursuant to **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988) and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988), within thirty days of the date of the order because the notes of testimony had been located. Order, 9/3/14. Counsel filed an amended PCRA petition on October 6, 2014. On March 4, 2015, the PCRA petition was dismissed. This timely appeal followed. Appellant filed a timely

court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal. The PCRA court filed a responsive opinion.

Appellant raises the following issue for our review:

> The trial court erred by denying Appellant a new trial due to trial counsel's failure to call Doctor John H. Bailey who would have offered testimony key to the defense's argument at trial on the issue of causation and specifically on whether the victim's injuries were consistent with an accidental [sic] fall brought on in part by the victim's extreme intoxicated state consistent with Dr. Bailey's witness statement filed in the above matter.

Appellant's Brief at 4. Appellant argues that Dr. Bailey could have rendered an opinion on causation and potential causes of the injuries sustained by Victim. *Id.* at 14. Dr. Bailey "performed an open reduction and fixation on [V]ictim's left both-bone forearm fracture . . . ." *Id.* Appellant contends causation was the key issue at trial because Appellant maintained Victim's injuries were caused after Appellant left the bathroom. *Id.* at 15. Appellant claims counsel acknowledged her ineffectiveness in the Witness Certification that she filed pursuant to Pa.R.Crim.P. 902(A)(15).[2] *Id.* at 16. Counsel

---

[2] Rule 902(A)(15) provides:

> (A) A petition for post-conviction collateral relief shall bear the caption, number, and court term of the case or cases in which relief is requested and shall contain substantially the following information:
>
>    *  *  *
>
> (15) if applicable, any request for an evidentiary hearing. The request for an evidentiary hearing shall include a

stated: "I also did not subpoena Dr. John H. Bailey who performed surgery on [Victim] on March 27, 2011 and who would have also been able to offer testimony concerning the causation of [Victim's] injuries, her level of intoxication and its effects on her physical well being and memory of the evening's events." *Id.* at 17, (quoting Witness Certification, 10/6/14, at ¶ 13).

This Court has stated:

> Our standard and scope of review for the denial of a PCRA petition is well-settled.
>
> [A]n appellate court reviews the PCRA court's findings of fact to determine whether they are supported by the record, and reviews its conclusions of law to determine whether they are free from legal error. The scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the trial level.
>
> *    *    *
>
> . . . Counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him. In Pennsylvania, we have refined the [***Strickland v. Washington***, 466 U.S. 668 (1984),] performance and prejudice test into a three-part inquiry. Thus, to prove counsel ineffective, the petitioner

signed certification as to each intended witness, stating the witness's name, address, and date of birth, and the substance of the witness's testimony. Any documents material to the witness's testimony shall also be included in the petition . . . .

Pa.R.Crim.P. 902(A)(15).

- 4 -

must show that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result. If a petitioner fails to prove any of these prongs, his claim fails. . . . To demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding.

* * *

[A] defendant [raising a claim of ineffective assistance of counsel] is required to show actual prejudice; that is, that counsel's ineffectiveness was of such magnitude that it "could have reasonably had an adverse effect on the outcome of the proceedings."

*Commonwealth v. Charleston*, 94 A.3d 1012, 1018-19 (Pa. Super.)

(some citations omitted), *appeal denied*, 104 A.3d 523 (Pa. 2014).

To establish counsel's ineffectiveness for failure to call a witness, a petitioner must demonstrate that:

(1) the witness existed; (2) the witness was available; (3) counsel was informed of the existence of the witness or counsel should otherwise have known of him; (4) the witness was prepared to cooperate and testify for Appellant at trial; and (5) the absence of the testimony prejudiced Appellant so as to deny him a fair trial. A defendant must establish prejudice by demonstrating that he was denied a fair trial because of the absence of the testimony of the proposed witness. Further, ineffectiveness for failing to call a witness will not be found where a defendant fails to provide affidavits from the alleged witnesses indicating availability and willingness to cooperate with the defense.

*Commonwealth v. O'Bidos*, 849 A.2d 243, 249 (Pa. Super. 2004)

(citations omitted).

Instantly, the PCRA court opined:

Medical evidence was introduced to show that [Victim] suffered a fracture of her left ulna and radius as well as ligament tears in her left knee. The Commonwealth presented testimony that [Appellant] inflicted the injuries on [Victim. Appellant] testified, however, that although there was some pushing back and forth with the bathroom door, [Victim] was still standing when [Appellant] left the bathroom and had not been injured. [Appellant] asserted that the injuries were the result of a fall.

In her petition, [Appellant] asserted that trial counsel was ineffective for failing to call as a witness John Bailey, M.D., who performed the surgery on [Victim's] arm. The court found no ineffectiveness as it believed Dr. Bailey's testimony, as contained in the witness certification filed January 6, 2015, would have been more favorable to the prosecution than the defense. According to the certification, Dr. Bailey would have testified that "it is certainly not outside of the realm of possibility" that [V]ictim's injuries were caused by a fall rather than from the alleged assault, but that "it is unlikely that a simple fall would result in this severity of injuries to both the knee and forearm." The court believed such testimony to be too speculative to support [Appellant's] request for a hearing.

PCRA Ct. Op., 3/31/15, at 1-2. Additionally, in the witness certification, Dr.

Bailey stated

I don't have any specific recall of this patient, but from reading my history and physical, operative note, and discharge summary, the best that I can tell you is that [Victim] reported to me that she was involved in an altercation. She sustained fractures of the radius and ulna of the left forearm and left knee medial collateral ligament and anterior cruciate ligament tears. . . . I would state that she was consistent at every step of the process in reporting that this was, in fact, an altercation.

Witness Certification of Doctor John H. Bailey, Jr. in Accordance with [Pa.R.Crim.P.] 902(A)(15).

At trial, Victim testified that she had started drinking at the Eagles Club between 11:30 and noon. N.T., 3/1/12, at 23. She had about eight mugs of beer prior to the incident. *Id.* She went to the bathroom between seven and eight p.m. *Id.* at 24. When she exited the bathroom stall, Melissa Palmer and Appellant were in the bathroom. *Id.* at 25. Appellant started yelling and Victim told her "[t]he only thing I want to hear out of you is that you have the money that you owe me." *Id.* Victim stated:

> I was drying my hands and I backed up so that another girl could get to the paper towels and that put me basically, if you would open the door, behind the door of the restroom.

> \* \* \*

> I remember being slammed with the door multiple times. I remember hitting the floor. I got back up and I started to be slammed with the door again and I was knocked unconscious. I came to on the floor and that's when Melissa Palmer asked me if I hit my head, and I looked up at my arm and saw that my bones were sticking out of my arm and I couldn't get up because I couldn't move my leg.

*Id.* at 25-26.

At trial, the Commonwealth read from Victim's medical records. *Id.* at 29. The Commonwealth stated:

> If the manager of the health records department for Susquehanna Health was here today she would testify that at 8:59 p.m. on March 26, 2011 [Victim] arrived at the

> Williamsport Hospital. Upon arrival [she] had an IV inserted and morphine was administered. At 10:45 p.m. a long arm splint was applied to [her] left arm, elbow, forearm, wrist, and hand. The splint was secured with two four-inch ace wraps. At 11:25 [she] attempted to stand and bear weight and was unable to bear weight on her left leg.

*Id.* at 29.

The medical records indicated that on March 27th, Victim had surgery on her arm described as "open reduction and internal fixation, left radius and ulnar fracture." *Id.* at 34. She had surgery for her left knee at Geisinger Medical Center. *Id.* at 35, 37. "The procedure involved ligament reconstruction." *Id.* at 37. Following surgery, her leg was in a brace and she was unable to walk for ten weeks. *Id.* at 36. Victim did physical therapy at Williamsport Hospital three times a week for four months. *Id.* at 39, 40.

Shannon Louise Wanamaker, a bartender at the Eagles Club, testified that she worked on the day of the incident from 10:30 a.m. until 6:30 p.m. *Id.* at 47. She saw Victim on the floor of the bathroom and asked her what happened. *Id.* at 48. Victim told her Appellant "beat the shit out of me." *Id.*

Erin Dailey, a paramedic, treated Victim as a result of an emergency dispatch from the Eagles Club regarding an assault victim. *Id.* at 61-62. She arrived at 8:15 p.m. *Id.* at 65. Victim told her that she had been drinking since one o'clock. *Id.* at 68. When asked if Victim appeared

intoxicated, Ms. Dailey stated that "[s]he was anxious, so that can be from pain. It could be from drinking. It's really hard to tell how much is from what." ***Id.***

Melissa Palmer testified that she was in the bathroom stall at the time of the incident. ***Id.*** at 72. Palmer "came out of the stall and [Victim] was on the floor trying to stand up and [Appellant] was over her yelling profanities." ***Id.*** She observed the following interaction between Victim and Appellant:

> Like, she would say—like, she was saying, you know, you're not so "F" ing tough now, are you, "B?" And [Victim] stood up and she looked really dazed and kind of confused, and [Appellant] grabbed the door to leave the restroom and when she opened it she pinned [Victim] in between the door and the wall. [Victim's] arms were up against wall [sic] and [Appellant] took her full body and slammed into her in this door five or six times, saying, you're not so tough now, are you, "B"? And you want to keep running your mouth, this is what happens. [Appellant] walked out of the bathroom.

> \* \* \*

> When the door was closing [Victim] turned and when she went to take a step she fell to the floor, and I thought she hit her head or something because I heard like a—that wap sound, so I leaned over and said, oh, my God, did you just hit your head? And she said, I think I broke my arm. She lifted her arm up and it was like—the bones were sticking out and stuff.

***Id.*** at 72-73, 74.

Walter Zuravensky, Jr., "was at the Eagles Club shooting pool" with Appellant on the date of the incident. ***Id.*** at 83, 84. Appellant told him that

she owed Victim money and Appellant said "I'm tired of her giving me all that shit and I should just punch her." *Id.* at 87. After he finished shooting pool, he went to go to the bathroom and he saw Appellant. *Id.* Appellant told him she "just knocked that fucking bitch out." *Id.*

Patrolman Jimmie William Rodgers of the Williamsport Police Department testified he "was dispatched to the Eagles Club for a fight that had occurred." *Id.* at 99. Victim was lying on the floor in the restroom with a visibly broken arm "complaining of an injury to her left knee." *Id.* at 100. She was "highly intoxicated" in his opinion. *Id.* Melissa Palmer told him when she came out of the bathroom "she saw [Appellant] slam the door open against [Victim], saw [Victim] drop to the floor and heard [Appellant] call her a bitch as she exited the bathroom." *Id.* at 100-01.

Appellant testified that as she "was trying to get out of the bathroom, [Victim was] pushing the door shut on [her]." *Id.* at 127. "[W]e were both fighting, her pushing the door to keep me in and me pushing the door to get out." *Id.* at 129. Appellant stated she "had absolutely nothing to do with them [sic] injuries. She was fine when I walked out of that bathroom. She was standing and there was no blood." *Id.* at 137. Appellant never saw Melissa Palmer in the bathroom. *Id.* at 140. According to Appellant, Palmer's testimony was false. *Id.*

We find Appellant has not satisfied the prejudice prong of the ineffective assistance of counsel test. *See Charleston*, 94 A.3d at 1019.

Appellant has not shown that the absence of the testimony of Dr. Bailey prejudiced her so as to deny her a fair trial. **See O'Bidos**, 849 A.2d at 249. Therefore, her ineffective assistance of counsel claim for failure to call a witness is without merit. **See id.** The evidence of record supports the determination of the PCRA court. **See Charleston**, 94 A.3d at 1019.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/23/2015