J-S58043-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JAMES WATSON | |
| Appellant | No. 216 MDA 2015 |

Appeal from the PCRA Order December 31, 2014
In the Court of Common Pleas of Bradford County
Criminal Division at No(s): CP-08-CR-0000449-2001

BEFORE:  GANTMAN, P.J., OLSON, J., and PLATT, J.*

MEMORANDUM BY GANTMAN, P.J.:                    **FILED JANUARY 15, 2016**

Appellant, James Watson, appeals from the order entered in the Bradford County Court of Common Pleas, which denied his first petition filed pursuant to the Post Conviction Relief Act ("PCRA").[1]  We affirm.

This Court previously set forth the relevant facts and procedural history of this case as follows:

> Generally, the evidence at trial, consisting of eyewitness testimony, established that in the afternoon of April 17, 2001, an argument developed between Jason Ryans [("Victim")] and the Watson brothers [(Kenny Watson and Appellant)] at Kenny Watson's home in Wilkes-Barre, Pennsylvania.  The Watsons believed that [Victim] had stolen a handgun and a safe containing marijuana and money.  During the argument, Kenny Watson punched [Victim].  In an ensuing struggle, Appellant grabbed a

---

[1] 42 Pa.C.S.A. §§ 9541-9546.

---

*Retired Senior Judge assigned to the Superior Court.

knife and inflicted multiple wounds to [Victim's] hands and arms. [Victim] was also punched and kicked repeatedly by the Watsons. The Watsons then bound the wrists of [Victim], either for the purpose of stopping his bleeding or to prevent his escape, or both. [Victim] was then placed in a vehicle and transported to a rural area near the Village of Camptown in Bradford County. There, [Victim] was taken from the vehicle and shot twice in the back of the head by Appellant. [Victim] apparently died immediately.

The evidence against Appellant and Kenny Watson diverged with respect to their criminal culpability following the altercation in Wilkes-Barre. After [Victim] was bound, the Watsons then informed others at the house that they would be taking [Victim] to a hospital, but would seek a rural hospital. The evidence revealed that Appellant was in fact simply looking for a secluded place to murder [Victim], but the evidence also suggested that Kenny Watson, among others, was duped into accompanying Appellant to Bradford County. The jury at least had a reasonable doubt as to Kenny Watson's complicity in any plan to kill [Victim], for it acquitted him of all charges of homicide and conspiracy to commit homicide. Kenny Watson's counsel admitted to the jury that his client was guilty of assault, but denied his involvement in any action or plan intended to kill [Victim].

Procedurally, the jury reached a verdict on September 12, 2002, convicting Appellant of first-degree murder, conspiracy to commit homicide, kidnapping, conspiracy to commit kidnapping, and other related offenses. The court sentenced Appellant on that day to life imprisonment for his murder conviction, but deferred sentencing on the remaining convictions. On November 22, 2002, the court imposed an aggregate sentence of forty-six (46) to ninety-two (92) years' imprisonment for Appellant's remaining convictions, consecutive to Appellant's life sentence.

This Court affirmed the judgment of sentence on August 20, 2004, and our Supreme Court subsequently denied allowance of appeal on April 18, 2005. *See* ***Commonwealth v. Watson***, 860 A.2d 1136 (Pa.Super. 2004), *appeal denied*, 582 Pa. 717, 872 A.2d 1199 (2005). On May 18, 2005, Appellant timely filed a *pro se* PCRA

petition. The court appointed counsel, who filed an amended PCRA petition on April 9, 2008. The court held hearings on the petitions on April 7, 2008, April 9, 2008, and January 6, 2010. The court denied PCRA relief on January 4, 2011.[2] On January 26, 2011, Appellant timely filed a notice of appeal.

> [2] The court determined it had improperly imposed separate sentences for each of Appellant's conspiracy convictions; consequently, the court granted PCRA relief in that respect only.

*Commonwealth v. Watson*, No. 202 MDA 2011, unpublished memorandum at 1-2 (Pa.Super. filed June 1, 2012) (some internal citations omitted). On appeal, this Court affirmed in part and remanded the case for the PCRA court to make additional findings with regard to two of Appellant's issues. *See id.* Following remand, the PCRA court again denied relief on January 2, 2015. Appellant filed a timely notice of appeal on January 30, 2015. The court ordered Appellant to file a concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(b). After the court granted an extension, Appellant timely complied.

Appellant raises the following issues for our review:

> DID THE PCRA COURT COMMIT ERROR REGARDING THE PRATO-BARR CONVERSATION WHEN, MAKING A CREDIBILITY DETERMINATION THAT PRATO'S TESTIMONY DID NOT NECESSITATE PCRA RELIEF FOR [APPELLANT], THE COURT FOUND THAT [APPELLANT] FIRST FAILED TO ESTABLISH THAT HIS TRIAL ATTORNEY KNEW OR SHOULD HAVE KNOWN OF THE PRATO-BARR CONVERSATION AND HAD PRATO TESTIFY AT TRIAL, AND SECOND, THAT [APPELLANT] FAILED TO ESTABLISHED PREJUDICE BECAUSE THE ABSENCE OF PRATO TESTIMONY AT TRIAL[?]

DID THE COURT COMMIT ERROR REGARDING THE PRESERVATION OF [APPELLANT'S] APPELLATE RIGHTS IN FIRST NOT FINDING THAT [APPELLANT'S] APPELLATE RIGHTS WERE NOT PRESERVED NOT EMPLOYING A "*PER SE*" PREJUDICE STATEMENT IN THIS CASE, AND SECOND NOT REACHING REAL CREDIBILITY DETERMINATIONS[?]

(Appellant's Brief at 4).

In his first issue, Appellant argues that his former girlfriend, Jennifer Barr, had a conversation with Janelle Prato shortly after the incident ("Prato-Barr conversation"), in which Ms. Barr indicated someone had been killed but Appellant was not the killer. Appellant contends the Prato-Barr conversation is evidence of Appellant's innocence and contradicts Ms. Barr's testimony at trial identifying Appellant as the person who killed Victim. Appellant claims the PCRA court failed to follow this Court's remand instructions to make credibility determinations regarding the PCRA hearing testimony of Ms. Prato and defense counsel on the issue of whether defense counsel was aware of the Prato-Barr conversation. Appellant asserts Ms. Prato credibly testified that she relayed the conversation to counsel's private investigator. Appellant concludes defense counsel's failure to call Ms. Prato as a witness at Appellant's trial constituted ineffective assistance. We disagree.

Our standard of review of the denial of a PCRA petition is limited to examining whether the evidence of record supports the court's determination and whether its decision is free of legal error. ***Commonwealth v. Jones***, 932 A.2d 179 (Pa.Super. 2007). This Court

grants great deference to the findings of the PCRA court if the record contains any support for those findings. ***Commonwealth v. Boyd***, 923 A.2d 513 (Pa.Super. 2007), *appeal denied*, 593 Pa. 754, 932 A.2d 74 (2007). If the record supports a post-conviction court's credibility determination, it is binding on the appellate court. ***Commonwealth v. Knighten***, 742 A.2d 679 (Pa.Super. 1999), *appeal denied*, 563 Pa. 659, 759 A.2d 383 (2000).

The law presumes counsel has rendered effective assistance. ***Commonwealth v. Gonzalez***, 858 A.2d 1219, 1222 (Pa.Super. 2004), *appeal denied*, 582 Pa. 695, 871 A.2d 189 (2005). When asserting a claim of ineffective assistance of counsel, the petitioner is required to make the following showing: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his action or inaction; and, (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. ***Commonwealth v. Kimball***, 555 Pa. 299, 312, 724 A.2d 326, 333 (1999). Because claims of ineffective assistance of counsel are not self-proving, the petitioner must develop each prong of the test in a meaningful fashion. ***Commonwealth. v. Spotz***, 587 Pa. 1, 896 A.2d 1191 (2006). Boilerplate, undeveloped argument regarding counsel's assistance is not sufficient to warrant PCRA relief. ***Id. See also Commonwealth v. Reaves***, 592 Pa. 134, 148, 923 A.2d 1119, 1128 (2007) (explaining specifically that collateral

attack under guise of ineffective assistance of counsel in collateral proceeding regarding alleged defaulted claims on appeal requires showing of actual prejudice). The failure to satisfy any prong of the test for ineffectiveness of counsel will cause the claim to fail. **Gonzalez**, **supra**.

To establish counsel's ineffectiveness for failure to call a witness, a petitioner must demonstrate:

> (1) the witness existed; (2) the witness was available; (3) counsel was informed of the existence of the witness or counsel should otherwise have known of [her]; (4) the witness was prepared to cooperate and testify for Appellant at trial; and (5) the absence of the testimony prejudiced Appellant so as to deny him a fair trial. A defendant must establish prejudice by demonstrating that he was denied a fair trial because of the absence of the testimony of the proposed witness. Further, ineffectiveness for failing to call a witness will not be found where a defendant fails to provide affidavits from the alleged witnesses indicating availability and willingness to cooperate with the defense.

**Commonwealth v. O'Bidos**, 849 A.2d 243, 249 (Pa.Super. 2004), *appeal denied*, 580 Pa. 696, 860 A.2d 123 (2004) (citations omitted).

Instantly, the PCRA court reasoned as follows:

> [Appellant] failed to prove that defense counsel knew or should have known about [the Prato-Barr conversation]. [Ms.] Prato herself testified that she provided her information to counsel's private investigator, but there is no evidence that the investigator relayed [Ms.] Prato's statements to counsel, and counsel denied having been told about the testimony [Ms.] Prato might have offered.

> The only evidence that defense counsel was informed prior to trial of [Ms.] Prato's testimony came from [Appellant] himself, who claims that he asked defense counsel about calling [Ms.] Prato to testify. [Appellant's] testimony was

not credible.

When first questioned by the police, [Appellant] gave a detailed account of how he had been involved in the beating, kidnapping, and execution of [Victim], an account that was wholly consistent with the facts related by [Rodney] Watson, who was present at all times, and by [Ms.] Barr, who was present for the kidnapping and murder[;] however, while testifying during the PCRA hearing, [Appellant] radically changed his story. He now claims that he was present when [Victim] was beaten, but then went home and remained home while [Victim] was kidnapped and killed.

Because [Appellant's] PCRA hearing testimony is not reliable, the court finds that [Appellant] has not established by a preponderance of the evidence that defense counsel knew or should have known that [Ms.] Prato could testify about [Ms.] Barr's prior inconsistent statement. Further, there is no evidence that defense counsel was derelict in his selection of a private investigator, nor in relying on the investigator to provide him with any and all exculpatory evidence.

The court also finds that [Appellant] has failed to satisfy the fifth element of a claim of ineffectiveness for failure to call a witness: The absence of [Ms.] Prato's testimony was not so prejudicial to [Appellant] as to have denied him a fair trial.

The evidence against [Appellant] at trial included the testimony of [Appellant's] mother that [Appellant] has confessed to her that he had killed [Victim] because he believed that after [Victim] was beaten he represented a threat to Kenny Watson and his family. Rodney Watson testified that he personally witnessed [Appellant] shoot [Victim]. Numerous witnesses supplied testimony that [Appellant] orchestrated the kidnapping and the killing, and commanded the after-the-fact cover-up. [Ms.] Barr's testimony was corroborated, often in fine detail, by Rodney Watson and, except for [Appellant's] claim that Kenny Watson was the shooter, [Appellant's] own statement to the police. The remarkable consistency of the statements of those involved leading to the moment of the execution

imbues [Ms.] Barr's testimony with an authenticity that her prior inconsistent statement lacks. Moreover, [Ms.] Prato's testimony about [Ms.] Barr's inconsistent statement refers to a time before [Appellant's] arrest and before [Ms.] Barr changed her initial statement to the police that Kenny Watson was the shooter. At the trial, [Ms.] Barr acknowledged that she had previously exculpated [Appellant], but explained that she did so because she was in fear of [Appellant]. Thus, [Ms.] Prato's testimony was cumulative of an inconsistency that [Ms.] Barr readily acknowledged. The testimony of [Ms.] Prato would have carried little weight, if any.

(PCRA Court Opinion, filed January 2, 2015, at 3-4). The record supports the PCRA court's analysis. The court explicitly discredited Appellant's PCRA hearing testimony. The court's observation that defense counsel denied any awareness of the Prato-Barr conversation, when read in the context of the court's conclusion that no evidence showed the Prato-Barr conversation was relayed to defense counsel, makes clear the court credited counsel's testimony. Thus, Appellant failed to satisfy his burden to show defense counsel knew or should have known of Ms. Prato and her potential testimony. **See Knighten, supra**; **O'Bidos, supra**. Further, Appellant failed to satisfy the prejudice prong, particularly where Ms. Barr's alleged statement to Ms. Prato was cumulative of her prior inconsistent statement to the police, which was introduced at trial, and Ms. Barr testified as to why she had initially attempted to exculpate Appellant. **See id.** Therefore, defense counsel was not ineffective for failing to call Ms. Prato as a witness.

In his second issue, Appellant argues defense counsel, who also represented Appellant on direct appeal, did not discuss with him the matter

of a direct appeal, including the strengths and weaknesses of potential claims and the consequences of failing to raise a particular issue. Appellant concedes counsel informed him of the one issue that would be raised on direct appeal, *i.e.*, the trial court's denial of Appellant's motion for a mistrial. Nevertheless, Appellant disputes counsel's testimony that they had discussed other possible appellate claims. Appellant contends the PCRA court again failed to make a specific credibility determination regarding the conflicting testimony of Appellant and defense counsel on this issue. Appellant concludes counsel rendered ineffective assistance when he failed to discuss potential appealable issues with Appellant. We cannot agree relief is warranted.

Pennsylvania law makes clear:

> [A]n accused who is deprived entirely of his right of direct appeal by counsel's failure to perfect an appeal is *per se* without the effective assistance of counsel, and is entitled to reinstatement of his direct appellate rights. In those extreme circumstances, where counsel has effectively abandoned his or her client and cannot possibly be acting in the client's best interests, our Supreme Court has held that the risk should fall on counsel, and not his client.

> However, it is also well-settled that the reinstatement of direct appeal rights is not the proper remedy when appellate counsel perfected a direct appeal but simply failed to raise certain claims. Where a petitioner was not **entirely** denied his right to a direct appeal and only some of the issues the petitioner wished to pursue were waived, the reinstatement of the petitioner's direct appeal rights is not a proper remedy. In such circumstances, the appellant must proceed under the auspices of the PCRA, and the PCRA court should apply the traditional three-prong test for determining whether appellate counsel was ineffective.

***Commonwealth v. Grosella***, 902 A.2d 1290, 1293-94 (Pa.Super. 2006) (internal citations and quotation marks omitted) (emphasis in original).

Instantly, defense counsel filed a timely direct appeal on Appellant's behalf following imposition of sentence. This Court disposed of Appellant's single issue on the merits and affirmed the judgment of sentence. Therefore, Appellant was not entirely denied his right to a direct appeal. Consequently, Appellant must satisfy the traditional three-prong ineffective assistance test to determine whether counsel was ineffective for failing to raise certain issues on appeal. ***See Reaves, supra***; ***Spotz, supra***; ***Grosella, supra***. Appellant, however, did not specify any additional issue he thought counsel should have raised on direct appeal. Moreover, Appellant presented no argument on any of the three prongs of the ineffective assistance of counsel standard. ***See id.*** Therefore, Appellant's ineffective assistance claim fails.[2] ***See Kimball, supra***. Accordingly, we affirm.

Order affirmed.

---

[2] Appellant's claim merits no relief even in the absence of a specific credibility finding. Here, Appellant had the benefit of a direct appeal decided on the merits. In any event, Appellant has not identified what additional issues he thought counsel should have raised on direct appeal. Additionally, in Appellant's prior collateral appeal, this Court disposed of Appellant's various other claims of ineffectiveness with respect to issues that conceivably could have been raised on direct appeal. ***See Commonwealth v. Watson***, No. 202 MDA 2011 (Pa.Super. filed June 1, 2012) (unpublished memorandum). Therefore, his current claim merits no further attention.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>1/15/2016</u>