J-S64013-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
LAQUINCEY ANTRON WATSON :
:
Appellant : No. 687 MDA 2017

Appeal from the PCRA Order March 30, 2017
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s):  CP-22-CR-0004163-2010
CP-22-CR-0004167-2010

BEFORE:   GANTMAN, P.J., PANELLA, J., and SHOGAN, J.

MEMORANDUM BY PANELLA, J.                **FILED FEBRUARY 01, 2018**

Appellant, LaQuincey Antron Watson, appeals from the order entered in the Court of Common Pleas of Dauphin County, denying his petition filed pursuant to the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. Watson contends both his pre-trial counsel and trial counsel provided ineffective assistance. We affirm.

The Commonwealth charged Watson with numerous offenses stemming from a residential burglary spree spanning four counties, which took place from November 2009 until March 2010. Typically, Watson parked his car near or at the targeted home and kicked in a door to gain access. He would then methodically rummage the home, stealing household electronics, cash, and other items of value.

After a three-day trial, a jury convicted Watson of twelve counts of burglary and one count each of robbery, receiving stolen property, and possession of a firearm. The trial court ultimately imposed an aggregate sentence of imprisonment of 22 to 44½ years. This Court affirmed his judgment of sentence. *See Commonwealth v. Watson*, 900 MDA 2013 (Pa. Super., filed August 11, 2014) (unpublished memorandum). And our Supreme Court denied Watson's petition for allowance of appeal. *See Commonwealth v. Watson*, 112 A.3d 652 (Pa. 2015) (Table).

Watson filed a timely *pro se* PCRA petition. The PCRA court appointed counsel who later filed an amended petition. The PCRA court denied the petition and this timely appeal followed. On appeal, Watson raises four issues concerning the ineffective assistance of counsel.

"On appeal from the denial of PCRA relief, our standard and scope of review is limited to determining whether the PCRA court's findings are supported by the record and without legal error." *Commonwealth v. Edmiston*, 65 A.3d 339, 345 (Pa. 2013) (citation omitted). On questions of law, our scope of review is *de novo*. *See id*.

To establish ineffectiveness of counsel, a PCRA petitioner must plead and prove: his underlying legal claim has arguable merit; counsel's actions lacked any reasonable basis; and counsel's actions prejudiced the petitioner. *See Commonwealth v. Spotz*, 18 A.3d 244, 260 (Pa. 2011). Failure to satisfy any prong of the ineffectiveness test requires dismissal of the claim. *See Commonwealth v. O'Bidos*, 849 A.2d 243, 249 (Pa. Super. 2004).

- 2 -

Watson first argues that Korey Leslie, Esquire, his preliminary hearing counsel, provided ineffective assistance by providing "confidential information" to the Commonwealth at a pretrial hearing. Appellant's Brief, at 12.

Prior to trial, Watson filed a petition for writ of *habeas corpus*, alleging the Commonwealth failed to present a *prima facie* case at the preliminary hearing. Attorney Leslie testified at the hearing held on the *habeas* petition. Watson claims he never waived his attorney-client privilege.[1] And according to Watson, Attorney Leslie's testimony "provided the Commonwealth with information on how the Appellant was going to proceed during the trial" and that his testimony explicitly disclosed "what the trial strategy would be[.]" *Id*. In support of this argument, Watson provides a single citation to the notes of testimony. The record, however, does not support his assertions as to any revelation of trial strategy.

At the hearing, Attorney Leslie testified only as to the strategy he employed *at the preliminary hearing*. *See* N.T., Pre-Trial Hearing, 6/28/12, at 11-12. There were 45 witnesses at the preliminary hearing ready to testify for the Commonwealth. *See id*., at 10. The Commonwealth called Attorney Leslie as a witness to explain his reasoning behind waiving the requirement of the Commonwealth calling all 45 witnesses to testify.

_____

[1] Watson's trial counsel lodged no objection to Attorney Leslie's testimony.

Attorney Leslie explained that "[u]p to that point there had only been maybe one or two identifications" and he "didn't want to run the risk of everyone getting on the stand and saying that they remembered him from somewhere." *Id*., at 12. At that stage of the proceedings, the defense, not surprisingly, was that Watson was not the perpetrator of the burglaries. *See id*., at 13, 23. So, to avoid potential identifications from the 45 witnesses assembled and ready to testify, Attorney Leslie entered into an agreement with the Commonwealth permitting them to proceed *at the preliminary hearing* without putting all of those witnesses on the stand. *See id*., at 15.

Attorney Leslie never disclosed anything about *trial* strategy. His testimony focused exclusively on the strategy employed at the preliminary hearing. *See id*., at 7-26. Thus, Watson's assertion he was prejudiced by Attorney Leslie's "reciting what the trial strategy would be" is simply baseless. Appellant's Brief, at 12.

Watson next argues trial counsel provided ineffective assistance by failing to object to the exclusion of all African-American jurors in violation of **Batson v. Kentucky**, 476 U.S. 79 (1986). There, the Court held that a prosecutor's challenge of potential jurors solely because of their race violates the Equal Protection Clause. **See id**., at 89.

If a defendant establishes a *prima facie* **Batson** claim, "the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the juror(s) at issue." **Commonwealth v. Hanible**, 30 A.3d 426, 475 (Pa. 2011) (citation omitted). However, "where," as here, "no **Batson** challenge

was raised during the *voir dire* process, a post-conviction petitioner is not entitled to the benefit of **Batson's** burden-shifting formula, but instead, bears the burden in the first instance and throughout of establishing actual, purposeful discrimination by a preponderance of the evidence." **Id**., at 476 (internal quotation marks and citation omitted). And a defendant who lodged no objection to the prosecutor's use of peremptory strikes during *voir dire* must "present a record identifying the race of the venirepersons stricken by the Commonwealth, the race of the prospective jurors acceptable to the Commonwealth but stricken by the defense, and the racial composition of the final jury selected." **Id**. (citation omitted).

Here, in his counseled PCRA petition, Watson did not even allege purposeful discrimination; he simply alleged the Commonwealth struck two African-American male jurors. **See** Amended PCRA Petition, filed 8/31/16, at ¶ 16. Nor did he present a record identifying the race of the prospective jurors stricken by the Commonwealth, the race of the prospective jurors acceptable to the Commonwealth, and the racial makeup of the selected jury. Rather, for the first time in his appellate brief, and without any citation to the record, Watson states, "all of the victims that testified in this case were white families, and his jury was all white." Appellant's Brief, at 14.

Assuming for the sake of argument the prosecutor struck more African-Americans than Caucasians, "[t]his fact, absent any other evidence of discrimination, is insufficient to demonstrate purposeful discrimination." **Hanible**, 30 A.3d at 478 (citation omitted). Nor has Watson provided (or

even alleged) any other evidence of racial bias, such as comments made by the prosecutor during *voir dire*. **See id**., at 478-479.

In fact, Watson concedes that a review of the record reveals "there is not enough evidence to meet the burden of showing purposeful discrimination." Appellant's Brief, at 14 n.1. This burden fell squarely on Watson. And as he cannot establish it, his claim fails.

Next, Watson argues trial counsel provided ineffective assistance when he failed to request a **Kloiber** instruction.

> A **Kloiber** instruction informs the jury that an eyewitness identification should be viewed with caution when either the witness did not have an opportunity to view the defendant clearly, equivocated on the identification of the defendant, or has had difficulties identifying the defendant on prior occasions.

**Commonwealth v. Sanders**, 42 A.3d 325, 332 (Pa. Super. 2012) (citation and footnote omitted). **See also** Pa. SSJI (Crim) § 4.07B Identification Testimony—Accuracy in Doubt.

At trial, Pamela Heinbaugh testified Watson broke into her home and she identified him directly. **See** N.T., Jury Trial, 9/11/12, at 57-60, 67. But she also admitted that approximately five months after the burglary she was unable to identify Watson in a Pennsylvania State Police photo array. **See id**., at 66-67.[2] Trial counsel extensively cross-examined Heinbaugh about

---

[2] On cross-examination, she explained the photo array provided to her "was a terrible copy." N.T., Jury Trial, 9/11/12, at 79.

inconsistencies in her trial testimony and preliminary hearing testimony and about her failure to identify Watson in the photo array. *See id.*, at 68-80.

But trial counsel did not request a *Kloiber* instruction. And such an instruction was clearly warranted, as Heinbaugh equivocated in her identification between the photo array and trial testimony.[3] Thus, this issue has arguable merit. We proceed to the prejudice prong.

Watson did not plead prejudice in his PCRA petition. *See* Amended PCRA Petition, filed 8/31/16, at ¶ 17. That alone is fatal to his claim. He did, however, assert prejudice in his brief. Even accepting that, Watson's entire argument on that prong is as follows: "Because it [*i.e.*, the *Kloiber* instruction] was not [given to the jury], the Appellant suffered prejudice and counsel was ineffective." Appellant's Brief, at 17. How? Saying it does not make it so. "Claims of ineffective assistance of counsel are not self-proving[.]" *Commonwealth v. Wharton*, 811 A.2d 978, 986 (Pa. 2002) (citations omitted).

_____

[3] The Commonwealth maintains no *Kloiber* charge was necessary as Heinbaugh testified she had a clear opportunity to observe Watson. *See* Commonwealth's Brief, at 12-13 The Commonwealth cites cases for the proposition that "once the opportunity to observe is established it becomes defense counsel's cross-examination, not the court's *Kloiber* charge, which must highlight any problems with the quality of a witness's observation." *Commonwealth v. Cleveland*, 703 A.2d 1046, 1049 (Pa. Super. 1997). That is certainly correct. But we are not dealing with opportunity to observe here; we are dealing with *equivocation in the two identifications*. Heinbaugh identified Watson at trial, but not in the photo array. *Cleveland* is inapposite. *See* Pa. SSJI (Crim) § 4.07B 2.

"In order to meet the prejudice prong of the ineffectiveness standard, a defendant must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." ***Commonwealth v. Reed***, 42 A.3d 314, 319 (Pa. Super. 2012) (internal quotation marks omitted; citations omitted). The PCRA "requires that the prejudice prong of an ineffectiveness claim be '*plead and prove[n]* by a preponderance of the evidence.'" ***Commonwealth v. Lassiter***, 722 A.2d 657, 663 n.8 (Pa. 1998) (opinion announcing the judgment of the court) (quoting 42 Pa.C.S.A. § 9543(a)) (emphasis and brackets in original). Watson's blunt conclusion in his brief does not establish a reasonable probability.

Lastly, Watson argues trial counsel provided ineffective assistance when he failed to request a corrupt source charge in regards to the testimony of Watson's girlfriend, Latoya Craighead, who testified as a Commonwealth witness.

Craighead testified Watson instructed her to go to his apartment and remove his possessions. ***See*** N.T., Jury Trial, 9/12/12, at 13-14. She went there and took "everything" out of his apartment, including "electronics." ***Id***., at 14. She further testified Watson instructed her to try to sell two televisions and a radio. ***See id***., at 17.

Watson maintains Craighead was an accomplice. "A person is an accomplice of another person in the commission of an offense if … with the

intent of promoting or facilitating the commission of the offense, [s]he …
aids or agrees or attempts to aid such other person in planning or
committing it[.]" 18 Pa.C.S.A. § 306(c)(1)(ii). "An accomplice charge is
necessitated not only when the evidence requires an inference that the
witness was an accomplice, but also when it permits that inference."
***Commonwealth v. Watts***, 501 A.2d 1152, 1154 (Pa. Super. 1985)
(citation omitted). ***See also Hanible***, 30 A.3d at 462 ("The charge is
warranted where the evidence is sufficient to present a jury question with
respect to whether the Commonwealth's witness is an accomplice.") The
motivation behind the instruction is that an accomplice witness will implicate
others to gain leniency. ***See Watts***, 501 A.2d at 1154. The instruction can
be found at Pa. SSJI (Crim) § 4.01 Accomplice Testimony.

The Commonwealth never charged Craighead with any crime, nor was
she facing charges. But the jury was unaware of this. From the jurors'
perspective, her actions in removing "everything" from Watson's apartment
and then her complying with his directive for her to try to sell two televisions
and a radio, in the context of this case, permits a reasonable inference that
she was an accomplice to the crime of receipt of stolen property.

The PCRA court relies on the fact that "Mrs. Craighead was cooperative
and testified on behalf of the Commonwealth" to support its finding that
Craighead was not an accomplice. PCRA Court Opinion, at 7. As does the
Commonwealth. ***See*** Commonwealth's Brief, at 14 (stating Craighead "was

- 9 -

fully cooperative with the investigation"). The witness's cooperation and testimony on the Commonwealth's behalf is the impetus behind the instruction. Accordingly, we find this issue has arguable merit. But is there prejudice?

Watson's argument founders, once more, on the prejudice prong. He did not plead prejudice in his PCRA petition. **See** Amended PCRA Petition, filed 8/31/16, at ¶ 20. As noted, by itself that is fatal to his claim. **See** 42 Pa.C.S.A. § 9543(a). And even looking past the failure to plead, in his brief Watson merely claims, "the testimony of Mrs. Craighead was crucial to the Commonwealth's case" and then simply concludes he "suffered prejudice, as the outcome of the trial could have been different if the correct jury instruction was given." Appellant's Brief, at 19. Again, one cannot but wonder how, exactly?

As mentioned, "[t]o demonstrate prejudice, a petitioner must show that there is a reasonable probability that, but for counsel's actions or inactions, the result of the proceeding would have been different." **Commonwealth v. Mason**, 130 A.3d 601, 618 (Pa. 2015) (citations omitted). Watson's terse conclusion falls far short of this standard.

Even if the jury disbelieved Craighead's testimony, the Commonwealth presented a plethora of evidence to establish beyond a reasonable doubt that Watson was the perpetrator of the burglaries and related crimes. For instance: Heinbaugh's identification of Watson at trial, **see** N.T., Jury Trial,

- 10 -

9/11/12, at 57-60, 67; Anthony Valenti's testimony of catching Watson trying to kick his home's door down, **see** N.T., Jury Trial, 9/11/12, at 106-107, 109; Detective James Glucksman's testimony, **see** N.T., Jury Trial, 9/11/12, at 126-191; and the testimony throughout trial concerning the technological ability to place Watson in close proximity to the burglaries through cellphone "pings."

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/1/18