J-A21015-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JERMAINE VILLINES | : | |
| | : | |
| Appellant | : | |
| | : | No. 1947 EDA 2020 |

Appeal from the PCRA Order Entered October 20, 2020,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s): CP-51-CR-0005660-2010.

BEFORE:   KUNSELMAN, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KUNSELMAN, J.:                **FILED OCTOBER 8, 2021**

Jermaine Villines appeals from the order denying his first timely petition filed pursuant to the Post Conviction Relief Act ("PCRA"). 42 Pa.C.S.A. §§ 9541-46. We affirm.

The PCRA court summarized the pertinent facts and partial procedural history as follows:

> On September 17, 2009, Anwar Conyers ("Decedent") was shot and killed in the city and county of Philadelphia. On October 15, 2009, [Villines] was arrested and charged with murder generally, conspiracy to commit murder, various firearms charges, and [possession of an instrument of crime].
>
> A jury trial began on January 18, 2011. During the course of the trial, it was established that [Villines] was at his house along with his cousin, William Villines ("Co-

_____

[*] Former Justice specially assigned to the Superior Court.

Defendant"). Testimony was provided that [Villines] got into a verbal argument with Decedent over money. This argument occurred right outside of [Villines'] house and was witnessed by his Co-Defendant. Upon witnessing this argument, Co-Defendant retrieved a firearm and went outside and followed Decedent as he walked towards his vehicle. Decedent then observed Co-Defendant's firearm and turned around with his arms raised saying "whoa, whoa, hold on." Co-Defendant asked [Villines,] "Hit him?" to which [Villines] replied[,] "Green Light. Hit him." Co-Defendant then shot Decedent and after he fell to the ground fired a total of five or six more shots at him. Decedent was struck three times and died as a result of the gunshot wounds. Co-Defendant made a statement to detectives after his arrest, generally acknowledging the aforementioned facts and also confirmed that Decedent was unarmed. However, [Co-Defendant] indicated that he believed Decedent was going to his car to retrieve a firearm.

On January 24, 2011, [Villines] was found guilty of third[-]degree murder and criminal conspiracy to commit murder. On March 17, 2011, he was sentenced to [an aggregate term of twenty to forty years of imprisonment].

On March [24], 2011, [Villines] filed timely post-sentence motions, which were denied on July 22, 2011. On August 1, 2011, [Villines] filed a timely notice of appeal to the Superior Court. On May 28, 2013 the Superior Court affirmed the judgment of sentence. On May 29, 2013, [Villines] filed a petition for allowance of appeal with the Supreme Court of Pennsylvania. The aforementioned petition was denied on October 29, 2013.

PCRA Court Opinion, 5/14/21, at 1-2 (excess capitalization omitted).

Villines filed a timely PCRA petition on April 29, 2014. Ultimately, the PCRA court denied the petition and Villines appealed. This Court remanded on the single issue of whether Villines waived his right to testify based upon trial counsel's advice that his prior conviction for escape was *crimen falsi*. **See Commonwealth v. Villines**, 221 A.3d 292 (Pa. Super. 2019) (non-

precedential memorandum). An evidentiary hearing was held on February 11, 2020, where both trial counsel and Villines testified. By order entered October 20, 2020, the PCRA court denied Villines' PCRA petition. This timely appeal followed. Both Villines and the PCRA court have complied with Pa.R.A.P. 1925.

Villines raised the following issue on appeal:

1. Did the PCRA court err in dismissing [Villines'] PCRA petition following a hearing because trial counsel was ineffective for informing [Villines] that he should not testify because if he testified, he would be impeached with a prior escape conviction and this caused prejudice to [Villines] and there was nothing in the oral colloquy to indicate that [Villines] was informed of his right to testify along with the likelihood that impeachment based upon the prior escape conviction would not occur?

Villines' Brief at 4 (excess capitalization omitted).

This Court's standard of review regarding an order dismissing a petition under the PCRA is to ascertain whether "the determination of the PCRA court is supported by the evidence of record and is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." ***Commonwealth v. Barndt***, 74 A.3d 185, 191-92 (Pa. Super. 2013) (citations omitted).

Villines' issue challenges the effectiveness of trial counsel. To obtain relief under the PCRA premised on a claim that counsel was ineffective, a petitioner must establish by a preponderance of the evidence that counsel's ineffectiveness so undermined the truth determining process that no reliable adjudication of guilt or innocence could have taken place. ***Commonwealth***

*v. Johnson*, 966 A.2d 523, 532 (Pa. 2009). "Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner." *Id.* This requires the petitioner to demonstrate that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) the petitioner was prejudiced by counsel's act or omission. *Id.* at 533. A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim. *Commonwealth v. Martin*, 5 A.3d 177, 183 (Pa. 2010).

Villines challenges the advice trial counsel gave him regarding the right to testify at trial. As this Court has summarized:

> [The decision to testify on one's own behalf] is ultimately to be made by the accused after full consultation with counsel. In order to support a claim that counsel was ineffective for failing to call the appellant to the stand, the appellant must demonstrate either that (1) counsel interfered with his client's freedom to testify, or (2) counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision by the client not to testify in his own behalf. Counsel is not ineffective where counsel's decision to not call the defendant was reasonable.

*Commonwealth v. O'Bidos*, 849 A.2d 243, 250 (Pa. Super. 2004) (citation omitted).

Here, the PCRA court concluded that Villines failed to meet this burden. The PCRA court first concluded that the trial record neither supported "the allegation that trial counsel informed [Villines] that he should not testify," nor

"the allegation that trial counsel informed [him] he could be impeached" given his prior conviction for escape. PCRA Court Opinion, 5/14/21, at 6.

To support its conclusion, the court cited in detail the exchange at trial between the court, trial counsel, the prosecutor, and Villines regarding trial counsel's advice to Villines regarding his decision to testify considering his prior criminal record. **See** PCRA Court Opinion, 5/14/21, 6-8.[1] The court then noted Villines' request to speak with trial counsel, and that the trial court took a luncheon recess.

After reconvening, the following exchange between the trial court and Villines occurred:

> THE COURT: Good afternoon, [Villines], if you would stand back up. You've had time now to discuss it with your attorney with the understanding that it is a very slim and rare possibility that your prior convictions would come in against you in any way. So knowing and understanding all of that, do your wish to testify?
>
> [VILLINES]: No, ma'am.
>
> THE COURT: Alright. So who made this decision, [Villines]?
>
> [VILLINES]: I have.
>
> THE COURT: Did anybody pressure you or force you or threaten you to go ahead and not testify?
>
> [VILLINES]: Not at all.

---

[1] In his prior appeal, this Court reproduced this testimony. **See Villines**, **supra**.

> THE COURT: Did anybody promise you anything now if you don't testify?
>
> [VILLINES]: No.
>
> THE COURT: Do you have any questions for me?
>
> [VILLINES]: No.
>
> THE COURT: Alright. Then I am making the finding that you have knowingly, intelligently and voluntarily made the decision not to testify. You can be seated.

PCRA Court Opinion, 5/14/21, at 8 (citing N.T., 1/21/11, at 122-23) (excess punctuation omitted).

The PCRA court then contrasted the above exchange with the following testimony from Villines at the PCRA hearing:

> [PCRA COUNSEL]: And what did [trial counsel] tell you, if anything, about escape being a crime of dishonesty?
>
> [VILLINES]: He didn't tell me this before we got to trial. We didn't have that conversation before we went to trial. That never happened. When we got to trial, it was me, my [Co-Defendant], his lawyer[,] [trial counsel], that's when all that came up. And then me and [trial counsel] talked about it alone. And that was it. We never had a conversation before that. He told me I could be impeached. So I was lost, like, because I wanted to testify. I went through the trial. But I don't have no choice now. I feel like my hand was forced.

PCRA Court Opinion, 5/14/21, at 9 (citing N.T., 2/11/20, at 52) (excess punctuation omitted).[2]

---

[2] We note at the PCRA hearing, Villines later testified that trial counsel told him his prior escape conviction was a "criminal [sic] falsi charge." N.T., 2/11/20, at 72.

Comparing the Villines' testimony at each proceeding, as a matter of credibility, the PCRA court found the record to refute Villines' ineffectiveness claim. As the court explained in detail:

Nowhere in the notes [of testimony] does trial counsel state that he advised [Villines] not to testify. What the record does show is that trial counsel informed [Villines] that, should he testify and say certain things, his prior convictions could possibly come in against him. It should be noted that the colloquy conducted by [the trial court] undercuts much of [Villines'] current claim. As per the [trial transcript], [Villines] told [the trial court] that no one forced him not to testify during his trial. [Villines] said the exact opposite during the [PCRA hearing], more than nine years later. Notable in [Villines'] testimony at the evidentiary hearing is, despite now claiming that he felt forced into not testifying, he stated "He told me I could be impeached," a statement that is somewhat consistent with the trial record and [trial counsel's] testimony during the evidentiary hearing. Although [trial counsel] never said [Villines] could be impeached, he did say that [Villines] might open the door to his convictions coming in against him. As was discussed on the trial record, [trial counsel] mentioned that if [Villines] took the stand and testified that his prior convictions might enter-in depending on what he says, for example, his prior weapon conviction coming in if [Villines] testified that he never had a firearm.

It must also be noted that the [trial transcripts] show discussion about how it was very unlikely that [Villines'] prior convictions could come in against him. [The trial court] stated that if [trial counsel] advised [Villines] properly that [Villines] would not testify in such a way that would open the door to his convictions being used. After being given the opportunity to confer with [trial counsel] once more, [Villines] again confirmed that he did not wish to testify, that [he] himself made this decision, and that nobody pressured him or promised him anything in exchange for not testifying. At the evidentiary hearing, [Villines] testified that [his] prior convictions might be used to impeach him. While not entirely accurate, due to [trial counsel] only saying only that these convictions might come

- 7 -

in based on what [Villines] said at trial, notably missing is [Villines] saying that [trial counsel] called these convictions *crimen falsi*.

\*\*\*

Regarding witness credibility, this court found that [trial counsel] testified credibly during the [PCRA] hearing. His testimony on [that day] aligned with what he said at trial [], namely that [Villines] had no *crimen falsi* and that his escape [conviction] might come in depending on how [Villines] testified. [Villines'] credibility also played a role, and due to the fact that, as stated **supra**, [the trial court] performed a colloquy of [Villines] and he stated that no one was forcing him not to testify, it undercuts his credibility now that he claims he was forced to not testify. Further, even if this court fully believed [Villines'] testimony at the [PCRA] hearing, [Villines' PCRA] hearing testimony failed to address certain inconsistencies[.] Considering that [trial counsel] stated in open court at [Villines'] trial that [Villines] had no *crimen falsi*, combined with [the trial court] explaining to [Villines] that it was highly unlikely that his convictions could be used against him, it stands to reason that [trial counsel] never once told [Villines] that he had any *crimen falsi* whatsoever.

PCRA Court Opinion, 5/14/21, at 9-12 (paragraph break added; citations and excess capitalization omitted).

As stated above, the PCRA court specifically found trial counsel's testimony to be more credible than that of Villines. As a matter of credibility, the PCRA court believed trial counsel's version of the contested facts. We cannot disturb this determination. **See Commonwealth v. Harmon**, 738 A.2d 1023, 1025 (Pa. Super. 1999) (explaining that when a PCRA court's determination of credibility is supported by the record, it cannot be disturbed on appeal); **see also Commonwealth v Todd**, 820 A.2d 707, 712 (Pa.

Super. 2003) (explaining that this Court "must defer to the credibility determinations made by the [PCRA] court that observed a witness's demeanor first hand").

Villines' claim to the contrary is unavailing. As noted by the PCRA court, the record refutes Villines' claim that "[t]here was nothing in the oral colloquy to indicate that [he] was informed of his right to testify along with the likelihood that impeachment based upon the prior [e]scape conviction would not occur." Villines' Brief at 8.

Villines claimed that there was some confusion at trial regarding whether his escape constituted a *crimen falsi* offense. However, actions of the prosecutor or the trial court are not relevant in assessing whether trial counsel was ineffective. Even were we to accept Villines' reading of the colloquy, and his claim of "confusion" created during the colloquy, the fact remains that the PCRA court credited trial counsel's testimony at the PCRA hearing that he had repeatedly told Villines that he had no prior *crimen falsi* offenses. *See Todd*, 820 A.2d at 712 (upholding the appellant's waiver of his right to testify based upon counsel's testimony).

Upon review, the PCRA court's conclusion that trial counsel never informed Villines that escape constituted a *crimen falsi* offense is reinforced by the following exchange between PCRA counsel and trial counsel at the PCRA hearing:

> [TRIAL COUNSEL]: I can't help that. If [Villines] chose
> to take the advice of the [prosecutor], and the [trial court's]

opinion about certain things, I don't have any control over that. I told [Villines] over and over and over again that he had no crimes of dishonesty. That there was no way that he could be impeached in terms of his credibility. [Villines] ran the risk that the door would be opened if he testified.

[PCRA COUNSEL]: Continuing on, did you specifically informed [sic] [Villines] that the [trial court] was incorrect, if [it] stated that escape was a crime of dishonesty?

[TRIAL COUNSEL]: I don't criticize judges in front of defendants. I told [Villines] over and over again that he had no *crimen falsi* crimes of dishonesty. But that he ran the risk of, when he testified, that the door would be open.

[PCRA COUNSEL]: Did you encourage [Villines] not to testify?

[TRIAL COUNSEL]: I never encouraged him not to testify. I may give him advice about whether it's a wise thing to do. But I never encouraged him one way or the other.

[PCRA COUNSEL]: And what was the advice, in this case, if you remember?

[TRIAL COUNSEL]: I didn't see anything that would be added by [Villines] testifying. The argument that I made to the jury is that [Villines'] encouragement only went as far as punching the [Decedent]. It didn't go towards shooting the [Decedent]. That seemed like a sound and good argument.

*Id.* (citing N.T. 2/11/20, at 125-26).

The above exchange refutes Villines' claim that, even after the evidentiary hearing, "[t]rial counsel's position remained confusing and incorrect." Villines' Brief at 16. Once again, the trial court's credibility determination is supported by the record and therefore binding on this Court. *Harmon*, *supra*.

- 10 -

In sum, our review of the record supports the PCRA court's conclusion that Villines' ineffectiveness claim lacks arguable merit, and we need not address the second and third prong of the ineffectiveness test. ***Johnson***, ***supra***. We therefore affirm its order denying Villines post-conviction relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/8/2021